UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Upstate Plumbing, Inc., | ) Civil Action No.: 6:17-cv-521-BHH |
| Plaintiff, | ) |
| vs. | ) |
| | ) **Opinion and Order** |
| AAA Upstate Plumbing of Greenville, LLC, | ) |
| Defendant. | ) |

This matter is before the Court on Defendant AAA Upstate Plumbing of Greenville, LLC's ("Defendant") motion to dismiss the first amended complaint (ECF No. 10) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17.) For the reasons set forth in this order, Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff Upstate Plumbing, Inc. ("Plaintiff") has continuously provided plumbing services in Greenville, South Carolina, and surrounding areas under the service mark UPSTATE PLUMBING ("the mark") since October 1992. (Am. Compl. ¶ 5, ECF No. 15.) According to the amended complaint, Plaintiff's use of the mark has been substantially exclusive for the duration of that period. (*Id.* ¶ 6.) Since 1992, Plaintiff has spent more than $250,000 on promotions and advertisements for its services, and generated more than $25 million in revenue associated with services performed for residential and commercial customers, under the mark. (*Id.* ¶¶ 7-9.) It is alleged that residential and commercial customers identify and associate Plaintiff as the source of plumbing

1

services provided under the mark, and that Plaintiff is the owner of all rights, title, and interest in the mark. (*Id.* ¶¶ 10-11.)

Plaintiff filed an application to register its rights in the mark with the U.S. Patent and Trademark Office on April 28, 2016. (*Id.* ¶ 12.) The application was approved on December 6, 2016, and UPSTATE PLUMBING was added to the Principal Register as an identifier of the source of services provided under the mark pursuant to U.S. Trademark Registration Number 5,095,101 ("'101 Registration"). (*Id.* ¶¶ 13-14; Ex. 1, ECF No. 10-1.)

In addition, Plaintiff has, since January 1995, continuously provided plumbing services in Greenville, South Carolina, and surrounding areas under a stylized service mark ("the stylized mark") consisting of a graphic with its business name and three stars arranged around the border of a circle, the letters "upi" superimposed over the circle, and an outline of the State of South Carolina superimposed where the hole would otherwise be in the aforementioned letter "p."[1] (*Id.* ¶ 18.) According to Plaintiff, its use of the stylized mark has been substantially exclusive during that time period. (*Id.* ¶ 19.) Since 1995,[2] Plaintiff has spent more than $200,000 advertising its services, and generated more than $21 million in revenue associated with services performed for residential and commercial customers, under the stylized mark. (*Id.* ¶¶ 20-22.) It is alleged that residential and commercial customers identify and associate Plaintiff as the

---

[1] [logo image]

[2] In paragraphs 20 through 22 of the amended complaint Plaintiff uses the year "1992." However, this appears to be a typographical error based on the fact that these paragraphs mirror paragraphs 7 through 9, which use the year "1992" in relation to the UPSTATE PLUMBING mark. The correct year applicable to use of the stylized mark is 1995. (*See* Am. Compl. ¶¶ 18-19, ECF No. 10.)

source of plumbing services provided under the stylized mark, and that Plaintiff is the owner of all rights, title, and interest in the stylized mark. (*Id.* ¶¶ 23-24.)

On April 28, 2016, Plaintiff filed an application to register its rights in the stylized mark with the U.S. Patent and Trademark Office. (*Id.* ¶ 25.) The application was approved on December 6, 2016, and the stylized mark was added to the Principal Register as an identifier of the source of services provided under the stylized mark pursuant to U.S. Trademark Registration Number 5,095,106 ("'106 Registration"). (*Id.* ¶¶ 26-27; Ex. 2, ECF No. 10-2.) Hereinafter, the Court will refer to the mark and the stylized mark collectively as the "Asserted Service Marks."

Plaintiff advances causes of action for federal and common law trademark infringement, false designation of origin, and unfair trade practices in violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code § 39-5-10, *et seq.* (*Id.* ¶¶ 33-66.) In general, Plaintiff alleges that Defendant misappropriated the mark by providing substantially identical plumbing services to residential and commercial customers in the Greenville, South Carolina area under the name "AAA UPSTATE PLUMBING of Greenville, LLC" ("the challenged mark"). (*Id.* ¶¶ 33-36.) Plaintiff avers that the words and images used by Defendant on business cards, signage, and service vehicles ("advertising materials") in connection with goods and services associated with the Asserted Service Marks are likely to cause confusion among consumers as to the source or origin of the goods and services, and are likely to cause a false perception as to an affiliation between Plaintiff and Defendant. (*Id.* ¶¶ 37-41.) Moreover, Plaintiff asserts that Defendant intentionally incorporated the words "UPSTATE PLUMBING" into its advertising materials in order to benefit from the excellent reputation enjoyed by

Plaintiff as a quality provider of plumbing services under the Asserted Service Marks, and in order to create confusion in the marketplace regarding services provided by Plaintiff and Defendant respectively. (*Id.* ¶ 42-43.)

It is alleged that Plaintiff regularly receives calls and inquiries from Defendant's customers seeking warranty service for plumbing services performed by Defendant under the challenged mark, and that Defendant's incorporation of the words "UPSTATE PLUMBING" into its advertising materials has caused multiple instances of actual confusion among Defendant's customers that Plaintiff is associated with or has endorsed Defendant. (*Id.* ¶¶ 44-45.) Plaintiff claims that Defendant's depiction of the challenged mark in connection with goods and services associated with the Asserted Service Marks has damaged Plaintiff by diverting customers and revenue from Plaintiff to Defendant, by damaging Plaintiff's reputation as a quality provider of plumbing services, and by confusing members of the public as to an affiliation between Plaintiff and Defendant. (*Id.* ¶ 48.) Moreover, Plaintiff contends that Defendant intentionally designed its advertising materials to mislead consumers into the belief that an affiliation exists between the two companies, and that Defendant did so with knowledge of the Asserted Service Marks. (*Id.* ¶¶ 53, 57.) Finally, Plaintiff asserts that Defendant's putative infringement and false designation of origin associated with the Asserted Service Marks "are continuing torts, repeated every day, that directly affect the public interest by intentionally confusing members of the public" regarding the nonexistent affiliation, and therefore constitute unfair trade practices in violation of SCUTPA. (*Id.* ¶¶ 63-64.)

Plaintiff seeks the following remedies: (a) a declaration that Plaintiff is the

exclusive owner of the Asserted Service Marks and that said marks are valid; (b) a finding that Defendant has infringed Plaintiff's Asserted Service Marks under 15 U.S.C. § 1114 and the common law; (c) a finding that Defendant has violated 15 U.S.C. § 1125(a) (false designation of origin); (d) a finding that Defendant has violated SCUTPA; (e) an injunction preventing Defendant from further depiction of "UPSTATE PLUMBING" in connection with goods and services associated with the Asserted Service Marks; (f) an order directing Defendant to deliver to Plaintiff for destruction all advertisements, materials, and products that include Defendant's depiction of "AAA UPSTATE PLUMBING of Greenville, LLC" in connection with goods and services associated with the Asserted Service Marks; (g) an award to Plaintiff of any profits obtained by Defendant associated with the acts alleged in the amended complaint; (h) an award to Plaintiff of damages caused by Defendant's alleged acts; (i) treble damages pursuant to 15 U.S.C. § 1117; (j) punitive damages for Defendant's alleged intentional acts; (k) costs, expenses, and attorneys' fees as permitted by 15 U.S.C. § 1117 and/or S.C. Code § 39-5-140; and (l) prejudgment interest. (ECF No. 10 at 12-13.)

Plaintiff filed its amended complaint on May 9, 2017. (ECF No. 10.) On May 23, 2017, Defendant filed its motion to dismiss the amended complaint. (ECF No. 17.) Plaintiff responded on June 6, 2017 (ECF No. 18), and Defendant replied on June 12, 2017 (ECF No. 19). The matter is ripe for review and the Court now issues the following ruling.

## **STANDARD OF REVIEW**

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In considering a motion to dismiss under Rule 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 243 (internal modifications, quotation marks, and citation omitted).

As previously noted, to survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a *plausible* claim for relief." *Iqbal*, 556 U.S. at 679 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts

6

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

## **DISCUSSION**

Plaintiff has alleged three causes of action: trademark infringement; false designation of origin; and unfair trade practices. Defendant generally asserts that the amended complaint fails to state a plausible claim because it lacks sufficient facts to establish a protectable mark in UPSTATE PLUMBING. (*See* ECF No. 17-1 at 2-4, 6-16.) Alternatively, Defendant argues that if the Asserted Service Marks are valid and protectable, dismissal is warranted as a matter of law because the actual differences between "UPSTATE PLUMBING" and "AAA UPSTATE PLUMBING of Greenville, LLC," and visual differences between the parties' respective design logos, are so distinct as to be distinguishable by a reasonable consumer and not be infringing. (*Id.* at 4, 16-29.) Finally, Defendant contends that Plaintiff failed to allege facts necessary to establish a plausible violation of SCUTPA because the infringement and false designation claims at

7

issue embody a garden variety name dispute between businesses and do not invoke an adverse impact on the public interest sufficient to support a SCUTPA claim. (*Id.* at 4-5, 29-35.) With the exception of arguments pertaining to the insufficiency of the SCUTPA claim, the arguments that Defendant advances in its motion to dismiss largely overlook the procedural posture of the case and seek a summary-judgment-style ruling from the Court regarding the merits of Plaintiff's claims. At the moment, the Court only concerns itself with the sufficiency of the pleadings. *See Edwards*, 178 F.3d at 243.

### I. Infringement and False Designation of Origin

To establish trademark infringement under the Lanham Act, a plaintiff must prove: "(1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (internal citations omitted). A false designation of origin claim requires proof of the same elements. *See Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) ("Both infringement and false designation of origin have [the same] elements."); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (same).[3] Plaintiff's Asserted Service Marks provide the foundation for its infringement and false designation of origin

---

[3] Though not directly relevant here, it should be noted that unfair competition claims under § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a)—including false designation of origin claims—do not always require ownership of a valid mark because § 43(a) "goes beyond trademark protection." *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). "For example, a plaintiff whose mark has become generic—and therefore not protectable—may plead an unfair competition claim against a competitor that uses that generic name and 'fail[s] adequately to identify itself as distinct from the first organization' such that the name causes 'confusion or a likelihood of confusion.'" *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 709 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1202 (2017) (quoting *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1043 (D.C. Cir.1989) (modifications in original).

claims.

## A. Plaintiff has Pled Sufficient Facts to Show that it Owns a Valid Mark

At this stage of the proceedings, the Court must accept all well-pled facts as true and construe those facts in the light most favorable to Plaintiff. *See Nemet*, 591 F.3d at 255. With this principle in mind, it is abundantly clear that Plaintiff has pled the facts necessary to plausibly show that it owns a valid mark. Specifically, the amended complaint indicates that Plaintiff has continuously and substantially exclusively provided plumbing services in the Greenville area under the Asserted Service Marks since January 1995 (and under the UPSTATE PLUMBING mark since October 1992). It further states that Plaintiff has spent more than $200,000 in advertising and generated more than $21 million in revenues associated with the Asserted Service Marks. Additionally, Plaintiff avers that residential and commercial customers have come to identify Plaintiff as the source of plumbing services provided under the Asserted Service Marks. These factual allegations plausibly support Plaintiff's common law rights in the Asserted Service Marks.

The '101 Registration constitutes prima facie evidence of the validity of the UPSTATE PLUMBING mark, Plaintiff's ownership thereof, and Plaintiff's exclusive right to use the mark in commerce in connection with plumbing services. Likewise, the '106 Registration constitutes prima facie evidence of the validity of the stylized mark, Plaintiff's ownership thereof, and Plaintiff's exclusive right to use the stylized mark in commerce in connection with plumbing services. Defendant's summary assertion that these registrations are "invalid and issued in error as a matter of law and due to be cancelled" (ECF No. 17-1 at 1 n.1) does not unilaterally erase these well-pled facts.

(*See* Am. Compl. ¶¶ 15-17, 28-30, ECF No. 10; Exs. 1 & 2, ECF Nos. 10-1 & 10-2.) This is not to say that the contested issues of the Asserted Service Marks' validity, Plaintiff's ownership, and Plaintiff's exclusive rights have been established in this case, but only that sufficient facts have been pled to satisfy this element of the infringement and false designation of origin claims and to survive a Rule 12(b)(6) motion. Defendant is welcome to challenge the validity of the Asserted Service Marks at a later stage of this litigation; however, the Court disagrees with Defendant's broad assertion that the current record mandates dismissal as a matter of law because UPSTATE PLUMBING is generic, lacks secondary meaning, and is therefore not protectable.

The factors for determining whether secondary meaning has attached are: (1) long use; (2) advertising; (3) sales volume; and (4) identity of service or origin in the minds of the purchasing public. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 n.3 (4th Cir. 1984). As already explained, Plaintiff has asserted specific facts to satisfy each of these factors and the Court is not entitled to disbelieve them.

### B. Sufficient Facts Support the Claim that Defendant Used the Mark or an Imitation in Commerce, Without Plaintiff's Authorization, in Connection with the Provision of Plumbing Services

It is undisputed that Defendant used the words "UPSTATE PLUMBING" as part of the challenged mark, AAA UPSTATE PLUMBING of Greenville, LLC. Photographs of Defendant's business cards, storefront signage, and service vehicle decals bearing such usage were included in the amended complaint. (Am. Compl. ¶¶ 37, ECF No. 10.) Moreover, it is uncontested that Defendant's use of the UPSTATE PLUMBING mark was done without Plaintiff's authorization, and was done in connection with Defendant's provision of residential and commercial plumbing services that were substantially

identical in kind to the services provided by Plaintiff under the Asserted Service Marks.

Plaintiff does not allege that Defendant misappropriated the stylized mark itself, but rather notes similarities in the dominant features of the two companies' service logos. (*Id.* ¶¶ 38-39.) The most prominent common feature is, again, the use of the words "UPSTATE PLUMBING." It is immaterial that Defendant did not use Plaintiff's precise stylized graphic. The gravamen of Plaintiff's infringement and false designation of origin claims is that Defendant, by insinuating an affiliation between the two businesses through its advertising materials, sought to improperly benefit from the good will and reputation that Plaintiff developed in the "UPSTATE PLUMBING" name over two decades. The Court finds that the amended complaint sets forth sufficient facts to plausibly establish elements two and three of a Lanham Act claim as itemized in *Rosetta Stone*.

### C. Sufficient Facts Support the Claim that Defendant's Use of the Mark Will Confuse Consumers

The Fourth Circuit has articulated nine factors that are generally relevant to the "likelihood of confusion" inquiry:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Rosetta Stone*, 676 F.3d at 153 (citing *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir.2009)). "This judicially created list of factors is not intended to be exhaustive or mandatory," *id.* at 154, and "not all these factors are always relevant or equally emphasized in each case." *Pizzeria Uno*, 747 F.2d at 1527 (quotation marks,

modifications, and citation omitted). Moreover, the Fourth Circuit has stated, "Although ***summary judgment*** on the likelihood of confusion issue is certainly permissible in appropriate cases, we have noted this is '***an inherently factual issue*** that depends on the facts and circumstances in each case." *Rosetta Stone*, 676 F.3d at 153 (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 933 (4th Cir. 1995)).

Plaintiff argues, and the Court agrees, that the following facts from the amended complaint plausibly support the claim that consumers have been and will be confused by Defendant's use of the UPSTATE PLUMBING mark. Regarding factor 2, the similarity of the two marks to consumers, the amended complaint alleges that Defendant provides plumbing services under the name "AAA UPSTATE PLUMBING of Greenville, LLC," and that the words UPSTATE PLUMBING are the dominant feature of Defendant's business cards, signage, and service vehicle decals. (Am. Compl. ¶¶ 34, 37-38, 51, ECF No. 10.) With respect to factor 3, the similarity of the goods or services that the marks identify, it is alleged that Plaintiff and Defendant provide, under their respective marks, substantially identical plumbing services to residential and commercial customers in the same local area. (*Id.* ¶¶ 5, 9, 18, 22, 36.) Concerning factor 6, the defendant's intent, Plaintiff avers Defendant intentionally incorporated the words "UPSTATE PLUMBING" into its advertising materials in order to benefit from the excellent reputation Plaintiff has established as a quality provider of plumbing services and in order to create the false impression of an affiliation between the two companies. (*Id.* ¶ 42-43, 53.) With regard to factor 7, actual confusion, it is alleged that Plaintiff regularly receives calls and inquiries from Defendant's customers seeking warranty

service for plumbing services performed by Defendant under the challenged mark, and that Defendant's incorporation of the words "UPSTATE PLUMBING" into its advertising materials has caused multiple instances of actual confusion among Defendant's customers that Plaintiff is associated with or has endorsed Defendant. (*Id.* ¶¶ 44-45, 55-56.)

The Court finds that each element of the trademark infringement and false designation of origin claims is plausibly supported by facts alleged in the amended complaint. Accordingly, the motion to dismiss these claims is denied.

## II.     Unfair Trade Practices

The elements of a SCUTPA claim are "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998); *see* S.C. Code § 39-5-140. Plaintiff's SCUTPA claim is derivative of its trademark infringement and false designation of origin claims. Trademark infringement and false designation of origin can form the basis of an unfair trade practices claim. *See, e.g.*, *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co.*, 642 F. Supp. 2d 493, 505 (W.D.N.C. 2009) (holding that Lanham Act violations were deceptive and unfair acts and could substantiate claims brought under North Carolina's Unfair and Deceptive Trade Practices Act); *see also Global Protection Corp. v. Halbersberg*, 503 S.E2d 483, 487 (S.C. Ct. App. 1998) (stating that the defendant's use of the plaintiff's trademark on product packaging was "[u]nquestionably" a deceptive practice under SCUTPA).

Unfair trade practices are "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a). "Unfair trade practices are practices which are offensive to public policy or which are immoral, unethical, or oppressive . . . while a deceptive practice is one which has a tendency to deceive." *Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585, 593 (D.S.C. 2013) (internal quotation marks and citation omitted). "A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition." *Id.* (citing *Haley Nursery Co. v. Forrest*, 381 S.E.2d 906, 908 (1989)). "The potential for repetition may be demonstrated in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *Wright v. Craft*, 640 S.E.2d 486, 502 (S.C. Ct. App. 2006). However, SCUTPA relief "is not available to redress a private wrong where the public interest is unaffected." *Columbia E. Assocs. v. Bi-Lo, Inc.*, 386 S.E.2d 259, 263 (S.C. Ct. App. 1989).

The SCUTPA states that in construing its prohibition on unfair competition "the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." S.C. Code § 39-5-20(b); *see also Raco Car Wash Sys., Inc. v. Smith*, 730 F. Supp. 695, 705 (D.S.C. 1989) ("Because SCUTPA is designed to emulate 15 U.S.C. § 45(a)(1), courts are directed to seek guidance from prior judicial interpretations of that act when construing SCUTPA."). Section 45(n) of the Federal Trade Commission Act states that the Commission has "no authority . . . to

14

declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is *likely to cause substantial injury to consumers* which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n) (emphasis added). Under § 45(a), "the mere fact that it is to the interest of the community that private rights shall be respected is not enough to support a finding of public interest," rather the public interest "must be specific and substantial." *F.T.C. v. Klesner*, 280 U.S. 19, 28 (1929) (holding that no public interest was invoked where the parties' dispute over the mark "Shade Shop" was "essentially private in nature," and "Shade Shop" had been used in conjunction with the names of the two contending businesses).

With these principles in mind, the Court concludes that Plaintiff's amended complaint fails to state a plausible SCUTPA claim because it does not allege sufficient facts to show an adverse impact on the public interest. Plaintiff argues that the following allegations should save its SCUTPA claim because they demonstrate that the consumer confusion resulting from Defendant's conduct is capable of repetition:

> [Defendant's] infringement and false designation of origin associated with the Asserted Service Marks intentionally deceive *the public* as to an affiliation between [Plaintiff and Defendant].
>
> [Defendant's] infringement and false designation of origin associated with the Asserted Service Marks are continuing torts, repeated every day, that directly affect *the public interest* by intentionally confusing members of *the public* as to an affiliation between [Plaintiff and Defendant].

(Am. Compl. ¶¶ 62-63, ECF No. 10 (emphasis added).) However, Plaintiff's mere invocation of "the public" and "the public interest" within the verbiage of its SCUTPA cause of action is insufficient to transform an "essentially private" business name dispute, *see Klesner*, 280 U.S. at 28, into a matter that could cause "substantial injury to

15

consumers," see 15 U.S.C. § 45(n). It is true that the Court must accept the well-pled facts in the amended complaint as true; however, a court considering a Rule 12(b)(6) challenge "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir.2006)) (modification in original).

The SCUTPA claim's invocation of the public interest is formulaic in nature, and the substance of the claim fails to plausibly show that the public will be ***adversely*** impacted by Defendant's use of the UPSTATE PLUMBING mark. It is theoretically possible that every substantiated instance of trademark infringement creates the potential for repetition. However, this does not eliminate the requirement that the public itself is the recipient of the harm in question. In other words, the consuming public may be confused into falsely believing that Plaintiff and Defendant are affiliated; such confusion may even be the intentional result of Defendant's use of the words "UPSTATE PLUMBING" on its business cards, signage, and service trucks; but the amended complaint does not plausibly show that this confusion *would injure the public*.

Any adverse impact of Defendant's putative trademark infringement and false designation of origin falls upon Plaintiff, not plumbing customers, and the nature of the dispute remains private. *See* 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:116 (5th ed.) (explaining that under the public interest requirement of a comparable New York consumer protection law "run of the mill trademark claims do not qualify"); *see also Something Old, Something New, Inc. v. QVC, Inc.*, No. 98 CIV. 7450 SAS, 1999 WL 1125063, at *12 (S.D.N.Y. Dec. 8, 1999)

("A trademark dispute concerning jewelry would not affect—much less harm—the public interest. A deliberate effort by one competitor to destroy the other's business is not considered a harm to the public interest."). Plaintiff has not alleged that Defendant's plumbing services are somehow dangerous, or that public confusion regarding an affiliation between the two businesses has led to financial loss or materially inferior service to customers. Rather, the alleged wrongs arising from Defendant's conduct are the diversion of customers and revenue away from Plaintiff, and the misappropriation of Plaintiff's sterling reputation without compensation. (*See* Am. Compl. ¶¶ 48, 58, ECF No. 10.) These are private wrongs and are insufficient to sustain the SCUTPA claim. *See Sinclair & Assocs. of Greenville, LLC v. Crescom Bank*, No. 2:16-CV-00465-DCN, 2016 WL 6804326, at *2 (D.S.C. Nov. 17, 2016) ("It is well established that the act is not available to redress a private wrong where the public interest is unaffected . . . ." (internal modification, quotation marks, and citations omitted)). "Without proof of specific facts disclosing that members of the public were adversely affected by the unfair conduct or that they were likely to be so affected, the result is a 'speculative claim of adverse public impact [ ] that will not suffice under the [SCUPTA].'" *Id.* at *3 (quoting *Bracken v. Simmons First Nat. Bank*, No. 6:13-cv-1377, 2014 WL 2613175, at *6 (D.S.C. June 9, 2014)) (modifications in original). No such specific facts are alleged here, and the claim of adverse impact to the public is speculative. Accordingly, the motion to dismiss the SCUTPA claim is granted.

## **CONCLUSION**

For the reasons set forth above, Defendant's Rule 12(b)(6) motion to dismiss (ECF No. 17) is GRANTED in part and DENIED in part. Specifically, the SCUTPA claim

is dismissed with prejudice, but the infringement and false designation of origin claims persist.

**IT IS SO ORDERED.**

<u>/s/ Bruce Howe Hendricks</u>
United States District Judge

March 26, 2018
Greenville, South Carolina